**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

November 13, 2020

Rahul Sharma, Esq.
Office of the Federal Public Defender
1002 Broad Street
Newark, NJ 07102
*Counsel for Defendant*

Craig Carpenito, Esq.
Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

**Re:**   *United States v. Khair*
          **Criminal Action No. 15-404**

Counsel:

Before this Court is Defendant Imadeldin Awad Khair's ("Defendant") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i). This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's motion.

**DISCUSSION**

A.

Although a district court generally has limited authority to modify a federally-imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States of America v. Ibn Muhammad,* Crim. No. 12-789, 2020 WL 6543216, at *1 (D.N.J. Nov. 5, 2020), the recently-enacted First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A)(i), permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. The statute provides, in relevant part, that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf

> or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).  As such, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release."  *Muhammad*, 2020 WL 16543216, at *2.

At the second step, a court may reduce an inmate's sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission, and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (citation omitted).  The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, serious functional or cognitive impairment, or deteriorating physical or mental health because of the aging process, "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13, cmt. n.1(A).

If a court does find that "compelling and extraordinary reasons" exist, it must then consider the relevant sentencing factors under Section 3553(a) before determining whether a reduction is warranted.  *United States v. Dunich-Kolb*, Crim. No. 14-150, 2020 WL 6537386, at *9 (D.N.J. Nov. 5, 2020) ("That requirement is no mere afterthought; it has independent bite.").  These factors include, but are not limited to: the defendant's history and characteristics, the need for the sentence imposed to reflect the seriousness of the offense, the need to promote respect for the law and provide just punishment, the need to encourage deterrence of criminal conduct, the sentencing range for the applicable offense category, and the need to avoid sentencing disparities.  *United States v. Pawlowski*, 967 F.3d 327, 329–30 (3d Cir. 2020); *United States v. Naik*, Crim. No. 18-190, 2020 WL 6156715, at *2 (D.N.J. Oct. 21, 2020); *Dunich-Kolb*, 2020 WL 6537386, at *10.

B.

On August 2, 2016, Defendant was convicted of health care fraud, obstruction of a federal audit, eleven counts of attempting to evade taxes, and four counts of money laundering in violation of 18 U.S.C. §§ 1347, 1516(a), 1956(a)(1)(A)(i)(ii), and 26 U.S.C. § 7201.  (D.E. 83.)  On January 30, 2017, Defendant was sentenced to 216 months imprisonment, three years of supervised release, and $8,841,210.15 in restitution.  (D.E 96 at 2-4.)  Defendant began serving his sentence at the

Federal Correctional Institute in Fort Dix ("FCI Fort Dix") on August 2, 2016. (D.E. 119 at 1; Bureau of Prisons ("BOP"), https://www.bop.gov/locations/institutions/crw/ (last accessed Nov. 10, 2020).)

On May 29, 2020, Defendant submitted a *pro se* petition to this Court. (D.E. 116.) At that time, it appears Defendant had not yet submitted a petition to the warden at FCI Fort Dix requesting compassionate release. (*Compare* D.E. 116 at 2 *to* D.E. 121 at 12.) On July 15, 2020, following appointment of counsel, Defendant filed the required petition with the warden at FCI Fort Dix. (D.E. 121 at 12; D.E. 119 at 3.) On August 10, 2020, the BOP advised the Government of "its view that [Defendant] was not eligible for consideration" for compassionate release, due to Defendant's disciplinary record and the fact he has only served 23% of his sentence. (D.E. 121 at 12.)

On October 16, 2020, Defendant filed a supplemental motion for compassionate release, arguing that his "chronic kidney disease and renal cell carcinoma," "place [him] at a higher risk" were he to contract the virus, and requesting that this Court "reduce his term of imprisonment."[1] (D.E. 119 at 2, 14; D.E. 121 at 2, 14.) The Government opposed on October 29, 2020. (D.E. 121.) In its opposition, the Government acknowledges that Defendant has "exhausted his administrative remedies." (D.E. 121 at 12.) On November 6, 2020, Defendant filed a reply, which, in part, detailed the spread of COVID-19 at FCI Fort Dix. (D.E. 119.)

C.

Defendant is sixty years old and suffers from serious medical conditions that leave him at a heightened risk of exposure to COVID-19. (*See* D.E. 116; D.E. 119; D.E. 121.) Defendant alleges that his medical conditions have worsened during his incarceration. (D.E. 119 at 1-2.) Defendant's medical conditions include: renal cell carcinoma, chronic kidney disease, diabetes, obesity, hypertension, dental pain, hearing problems, and limited mobility. (D.E. 119 at 4-9; D.E. 121 at 12-13.) According to the Centers for Disease Control and Prevention ("CDC"), Defendant is at a higher risk of severe illness from COVID-19 due to his chronic kidney disease, renal

---

[1] The Government insists that Defendant's motion for compassionate release amounts to a request for a 14-year sentence reduction. (D.E. 121 at 1.) In response, Defendant clarifies his request: He asks that this Court "impose a special period of supervised release not to exceed the remainder of [Defendant's] prison sentence, and to impose whatever conditions it deems necessary under § 3553(a) during that special period, including 24-hour home incarceration." (D.E. 122 at 1; *see also* D.E. 119 at 14.) To the extent Defendant requests that this Court "convert his term of imprisonment into a term of home confinement," this "is not a proper request under the section." *See United States v. Konny*, 463 F. Supp. 3d 402, 405 (S.D.N.Y. 2020) (citing *United States v. Logan*, Crim. No. 15-27, 2020 WL 2559955, at *2 (W.D. N.C. May 20, 2020)); *United States v. Picardo*, Crim. No. 19-401, 2020 WL 6501730, at *2 (D.N.J. Nov. 5, 2020). This Court may, however, set conditions on a term of supervised release, should it find the other statutory requirements under the First Step Act satisfied. *United States v. Davidson*, Crim. No. 16-139, 2020 WL 4877255, at *21 (W.D. Pa. Aug. 20, 2020) (courts "do have authority under § 3582(c)(1)(A) to modify a defendant's term of imprisonment such that the remaining portion of the defendant's in-custody term is substituted for a period of supervised release with the condition of home confinement."); *see also Konny*, 463 F. Supp. 3d at 405. However, because this Court concludes that the Section 3553(a) factors do not weigh in favor of granting Defendant's motion, this Court will not modify Defendant's sentence.

carcinoma,[2] obesity, and diabetes, and may also be at an increased risk of disease due to his hypertension. *See* CDC, *People with Certain Medical Conditions* (last updated Oct. 6, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The CDC has not found that hearing, dental, or mobility issues place individuals at increased risk. *Id.*

This Court finds, and the Government acknowledges, that Defendant's medical concerns constitute extraordinary and compelling reasons for a sentence reduction. (D.E. 121 at 12.)[3] Defendant suffers from multiple serious medical conditions—in particular, his suspected renal cell carcinoma and chronic kidney disease—that place him at a higher risk of severe COVID-19 complications. *See, e.g.*, *United States v. Davidson*, Crim. No. 16-00139, 2020 WL 4877255, at *19 (W.D. Pa. Aug. 20, 2020) (defendant's medical conditions, which included chronic kidney disease, diabetes, and hypertension, qualified as compelling and extraordinary, in part because of their "compounded and progressive nature"); *United States v. Brown*, Crim. No. 13-176-1, 2020 WL 5801494, at *3 (E.D. Pa. Sept. 29, 2020) ("Courts have determined that chronic kidney disease can present an 'extraordinary and compelling' reason for compassionate release."). Defendant's medical conditions are significant risk factors that make him less able to protect himself from an unfavorable outcome were he to contract COVID-19. *See, e.g., United States v. Tidwell*, Crim. No. 94-353, 2020 WL 4504448, at *5 (E.D. Pa. Aug. 5, 2020) (discussing terminal cancer, but noting generally that "cancer, combined with the COVID-19 pandemic, renders [Defendant] 'less able to protect himself against an unfavorable outcome from the disease' and constitutes an extraordinary and compelling reason"); *United States v. Council*, Crim. No. 18-00219, 2020 WL 5215142, at *2 (M.D. Pa. Sept. 1, 2020) (finding defendant's medical conditions, which included chronic kidney disease, to be "extraordinary and compelling," noting that "[t]he risks posed by chronic kidney disease … have been confirmed by numerous studies"). Taken together, Defendant's medical conditions place him at elevated risk and constitute compelling and extraordinary reasons, particularly in conjunction with FCI Fort Dix's concerning rate of COVID-19 infection. 18 U.S.C. § 3582(c). [4]

---

[2] After Defendant was diagnosed with renal carcinoma, his right kidney was removed. (D.E. 119 at 5; D.E. 117 at 1556.) Doctors suspect that a mass in Defendant's remaining kidney may be similarly affected, but have not yet been able to confirm. (D.E. 119 at 5.) "Adults of any age with [cancer or chronic kidney disease] are at increased risk of severe illness from the virus that causes COVID-19." *See* CDC, *People with Certain Medical Conditions* (last updated Oct. 6, 2020) (noting that it is "not yet known" whether a history of cancer also increases the risks of COVID-19), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Thus, Defendant's chronic kidney disease and renal carcinoma do seem to increase his risk of severe COVID-19. *Cf. United States v. Aherns*, Crim. No. 11-66, 2020 WL 5097512, at *3 (D.N.D. Aug. 28, 2020) ("[A]lthough a solitary kidney is not a standalone risk factor, medical studies indicate that the virus frequently 'wreaks havoc on the kidneys' and can result in kidney failure—even for otherwise healthy individuals.").

[3] Some of Defendant's medical conditions existed at the time of sentencing and were considered by this Court when imposing sentence. (*See, e.g.*, D.E. 92 at 2.)

[4] This Court recognizes that conditions at FCI Fort Dix are very concerning. The Government argues that the BOP has undertaken various interventions, in accordance with its COVID-19 Action Plan, to minimize the risk of COVID-19 transmission at FCI Fort Dix. (D.E. 121 at 1, 3-5, 10 (noting that FCI Fort Dix has only 59 active cases).) Although this Court recognizes that the rate of COVID-19 infection at federal correctional facilities is in constant flux, the

After finding "extraordinary and compelling reasons," a court must then "consider[] the factors set forth in section 3553(a)."  18 U.S.C. § 3582(c)(1)(A); *see, e.g.*, *United States v. Council*, Crim. No. 18-219, 2020 WL 5215142, at *5 (M.D. Pa. Sept. 1, 2020) (finding compelling reasons for compassionate release, but denying defendant's motion after weighing the Section 3553(a) factors); *United States v. Lisi*, 440 F. Supp. 3d 246, 253 (S.D.N.Y. 2020), *reconsideration denied*, Crim. No. 15-457, 2020 WL 1331955 (S.D.N.Y. Mar. 23, 2020) (same).

First, this Court considers the Defendant's history and characteristics, and the nature and circumstances of Defendant's offense.  *See* 18 U.S.C. § 3553(a)(1).  Defendant's offense was non-violent, and there is no evidence to suggest a predilection for violence should he be released.  (D.E. 121; D.E. 119.)  Nonetheless, Defendant's criminal conduct was serious, calculated, and repeated.  (*See* D.E. 121 at 13-14 (describing Defendant's prior recidivism and tendency towards manipulative behavior).)  Defendant was first convicted of healthcare fraud in 2003.  (D.E. 121 at 2.)  After his release (and in deliberate violation of the conditions of his probation), Defendant again took a leading role in a healthcare and tax fraud scheme. (D.E. 121 at 3.)  Defendant was ordered to pay over $8 million in restitution, which is indicative of the losses he inflicted.  (D.E. 121 at 2.)  Being prosecuted for, and ultimately convicted of, tax and healthcare fraud did not quell Defendant's brazen behavior.  Rather, Defendant demonstrated little concern for telling the truth to his probation officer, respecting the rules of this Court, or following the rules of confinement.  (*See* D.E. 121 at 1, 2, 14-15 (noting Defendant's use of a cell phone while incarcerated).)  Taken together, Defendant's history of recidivism and other characteristics weigh against release.  *Dunich-Kolb*, 2020 WL 6537386, at *10 (defendant's actions, which "defraud[ed] the government," suggested "little compunction about doing others harm") (citation omitted); *United States v. Alexander*, Crim. No. 19-32, 2020 WL 2507778, at *5 (D.N.J. May 15, 2020) (denying defendant's motion, in part because he had taken part in illegal activity while "on supervised release," which "gave rise to his current conviction and sentence"); *United States v. Ordaz*, Crim. No. 98-587, 2020 WL 5993289, at *9 (E.D. Pa. Oct. 9, 2020) (denying defendant's motion, in part because she had demonstrated a "tendency to continue criminal activity" while imprisoned and on parole).

Other Section 3553(a) factors also weigh heavily against release.  *See* 18 U.S.C. § 3553(a)(2).  Defendant was sentenced to 216 months in prison—the low end of the Sentencing Guideline range for his offenses.  (*See* D.E. 121 at 2.)  He has served only a small portion of that sentence, which counsels against granting him early release.  *See Dunich-Kolb*, 2020 WL 6537386, at *10 (denying release where defendant, who had served roughly 50% of his sentence for tax and mail fraud, had "not served an amount that would adequately address the seriousness of the offense

---

Government's arguments that FCI Fort Dix has successfully controlled the virus are simply not accurate. As of mid-November 2020, FCI Fort Dix reported the worst inmate outbreak in the country—229 positive inmates and 12 positive staff members at last count. BOP, *COVID-19* (Nov. 11, 2020, 1:00 PM), https://www.bop.gov/coronavirus/; *COVID-19 Outbreak Infecting Hundreds at Fort-Dix*, https://www.inquirer.com/news/fci-fort-dix-coronavirus-covid-outbreak-transfers-elkton-cory-booker-bob-menendez-20201110.html (last visited Nov. 10, 2020.). Thus, "the Court is somewhat skeptical of the Government's confidence in BOP containment efforts" at FCI Fort Dix. *United States v. Brown*, Crim. No. 13-176, 2020 WL 5801494, at *3 (E.D. Pa. Sept. 29, 2020). However, as the Section 3553(a) factors weigh clearly in favor of denial, the Government's argument on this point is not dispositive.

or serve the goals of punishment and deterrence"); *Jimenez*, 2020 WL 5887578, at *3 (denying release where defendant had served only 26 months, and the sentencing guidelines suggested 70 to 87 months); *cf. United States v. Graham*, Crim. No. 6-478, 2020 WL 6391177, at *4 (D.N.J. Nov. 2, 2020) (granting release where defendant had served 99% of his sentence); *Aherns*, 2020 WL 5097512, at *5 (granting release where defendant had served 126 months, and the current sentencing guidelines suggested a term of 121-156 months); *Naik*, 2020 WL 6156715, at *3 (granting release where defendant, who was "not the mastermind" of the scheme for which he was convicted, had been sentenced to only 8 months, served 50% of his sentence, and was soon to be moved to home confinement). Here, Defendant has served roughly 51 months in prison, less than a quarter of his total sentence, and releasing him would not "reflect the seriousness of the offense," "promote respect for the law," or "provide just punishment." *See* 18 U.S.C. §§ 3553(a)(2)(A); *compare United States v. Brown*, Crim. No. 13-176-1, 2020 WL 5801494, at *1 (E.D. Pa. Sept. 29, 2020) (defendant served over a decade in prison "without incident," and had "focused on bettering himself so that he may be a productive member of society upon reentry") *to* D.E. 121 at 16 n.4 (Defendant has served little of his sentence, "his offense conduct was [] replete with obstructive behavior," and he has "continued to commit crimes while in prison").

Notwithstanding BOP's classification of Defendant as low risk for *future* recidivism (D.E. 119 at 3), early release would discourage, rather than advance, the goals of punishment, deterrence, and protection of the public given Defendant's *prior* recidivism and infractions while detained at FCI Fort Dix, (*see* D.E. 121). Further, Defendant's early release would create an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6); *see Kimbrough v. United States*, 552 U.S. 85, 107 (2007) (noting that "uniformity remains an important goal of sentencing"). Although this Court is sympathetic to Defendant's medical conditions and the risks he faces at FCI Fort Dix, Defendant appears to be receiving adequate treatment for his medical conditions in confinement. (*See* D.E. 117 (medical records that detail Defendant's medical treatment); D.E. 121 at 13 n.3 (noting that "despite the pandemic, [Defendant] has continued to have regular access to medical care, with recent visits on August 26, August 12, and July 16, 2020 . . .").) Therefore, this Court concludes that the Section 3553(a) factors do not weigh in favor of Defendant's early release. *See* 18 U.S.C. § 3553(a).

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Compassionate Release is **DENIED**. Should a change in circumstances so require, Defendant may renew his motion. An appropriate order follows.

                                                                  /s/ Susan D. Wigenton  
                                                         **SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk  
cc: Parties