NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHAMBERS OF<br>**SUSAN D. WIGENTON**<br>UNITED STATES DISTRICT JUDGE | MARTIN LUTHER KING COURTHOUSE<br>50 WALNUT ST.<br>NEWARK, NJ 07101<br>973-645-5903 |

July 25, 2023

Alison Brill
Office of the Federal Public Defender
22 South Clinton Avenue
Station Plaza 4, Fourth Floor
Trenton, NJ 08609
*Counsel for Defendant Imadeldin Khair*

Katherine M. Romano
Office of the United States Attorney
970 Broad Street
Newark, NJ 07102
*Counsel for the United States of America*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

   **Re:**   *United States v. Imadeldin Khair*
          **Criminal Action No. 15-404 (SDW)**

Counsel:

Before this Court is Defendant Imadeldin Khair's ("Defendant") Emergency Motion for Compassionate Release ("Motion") under the First Step Act ("FSA"), 18 U.S.C. § 3582(c)(1)(A). (D.E. 129.) This Court having considered the parties' submissions, and for the reasons discussed below, denies Defendant's Motion.

**DISCUSSION**

A.

Although a district court generally has limited authority to modify a federally imposed sentence once it commences, *see Dillon v. United States*, 560 U.S. 817, 825 (2010); *United States v. Brow*, 62 F.4th 114, 118 (3d Cir. 2023), the FSA permits district courts to grant compassionate release where there exist "extraordinary and compelling reasons" to reduce a sentence. 18 U.S.C. § 3582(c)(1)(A). The statute provides, in relevant part, that:

> (A) [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has

> fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id.* Accordingly, under the FSA, "a defendant seeking a reduction in his term of imprisonment bears the burden of establishing both that he has satisfied (1) the procedural prerequisites for judicial review, and (2) that compelling and extraordinary reasons exist to justify compassionate release." *United States v. Epstein*, Crim. No. 14-287, 2020 WL 1808616, at *2 (D.N.J. Apr. 9, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)).

The prerequisites for judicial review are straightforward. First, a defendant seeking a reduced sentence must ask the Bureau of Prisons ("BOP") to file a motion for a reduced sentence on his behalf. 18 U.S.C. § 3582(c)(1)(A). Then, the defendant must either (i) wait thirty days for the BOP to respond or (ii) exhaust all available administrative appeals after receiving an adverse decision from the BOP. *United States v. Raia*, 954 F.3d 594, 595–97 (3d Cir. 2020).

Once a defendant has satisfied those prerequisites, a court may reduce a defendant's sentence "if the court finds that (1) extraordinary and compelling reasons warrant a reduction, (2) the reduction would be consistent with applicable policy statements issued by the Sentencing Commission,[1] and (3) the applicable sentencing factors under § 3553(a) warrant a reduction." *United States v. Sparrow*, Crim. No. 18-653, 2020 WL 4364328, at *2 (D.N.J. July 30, 2020) (quoting *United States v. Pabon*, Crim. No. 17-165-1, 2020 WL 2112265, at *2 (E.D. Pa. May 4, 2020)).

B.

On August 2, 2016, Defendant was convicted of health care fraud, obstruction of a federal audit, eleven counts of attempting to evade taxes, and four counts of money laundering in violation of 18 U.S.C. §§ 1347, 1516(a), 1956(a)(1)(A)(i)(ii), and 26 U.S.C. § 7201. (D.E. 83.) On January 30, 2017, this Court sentenced Defendant to a term of 216 months' imprisonment followed by

---

[1] Although the Sentencing Commission's policy statement is not binding on this Court, "it still sheds light on the meaning of extraordinary and compelling reasons." *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021). The Sentencing Commission's relevant policy statement identifies medical conditions that meet the "extraordinary and compelling" requirement as those where the defendant is (i) suffering from a terminal illness, or (ii) suffering from a serious physical or medical condition, a serious functional or cognitive impairment, or experiencing deteriorating physical or mental health due to aging, that substantially diminishes the ability of the defendant to provide self-care within a correctional facility and from which they are not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A).

three years' supervised release and ordered him to pay $8,841,210.15 in restitution. (D.E. 96 at 2–4.) Defendant began serving his sentence at Federal Correctional Institute in Fort Dix, New Jersey ("FCI Fort Dix") on August 2, 2016. (D.E. 129 at 2.)

Since 2020, Defendant has submitted to this Court several requests for compassionate release. First, on May 29, 2020, Defendant filed a *pro se* motion for compassionate release without having exhausted his administrative remedies with the BOP. (D.E. 123 at 3.) On July 15, 2020, following appointment of counsel, Defendant submitted the required petition to the warden at FCI Fort Dix. (D.E. 119 at 3; D.E. 121 at 12.) The BOP denied Defendant's request, and, on October 16, 2020, Defendant filed with this Court an "emergency supplemental" motion for compassionate release. (D.E. 119.) On November 13, 2020, this Court denied Defendant's motion.[2] (*See generally id.*) On February 2, 2022, Defendant again sought compassionate release, but since his submission failed to "raise any new issues that were not addressed in the [November 13, 2020 Opinion]," this Court again denied his request. (D.E. 126.)

On July 3, 2023, Defendant sent to the warden of FCI Fort Dix a letter requesting "a reduction in sentence pursuant to 18 U.S.C. § 3582." (Defendant's Exhibit A ("Def. Ex. A") at 926.) Just three days later, on July 6, 2023, Defendant filed the instant Motion. (D.E. 129.) The Government opposed the Motion on July 12, 2023, (D.E. 130), and Defendant filed a reply the next day, (D.E. 131).

C.

Defendant raises several arguments in support of the instant Motion. (D.E. 129 at 12–22.) Specifically, Defendant alleges that he has been hospitalized with chronic, life-threatening conditions since May 30, 2023[3]; that the BOP has failed to provide him with adequate medical care[4]; and that the section 3553(a) factors now support his compassionate release. (*See generally* D.E. 129.) Although Defendant's medical conditions likely amount to extraordinary and compelling reasons to justify release, his Motion must be denied because he has failed to exhaust his administrative remedies under the FSA.

**Procedural Prerequisite**

---

[2] Despite finding that Defendant's then-current medical conditions—chronic kidney disease, renal cell carcinoma, diabetes, obesity, hypertension, dental pain, hearing problems, and limited mobility—constituted extraordinary and compelling reasons to justify his release, this Court still denied the motion because the sentencing factors set forth in 18 U.S.C. § 3553(a) "weigh[ed] heavily against" it. (*See generally* D.E. 123.)

[3] On May 30, 2023, Defendant underwent kidney surgery, which caused his health to severely decline. (D.E. 123 at 3, 5–6.) Defendant contends that his kidney function immediately deteriorated; that he was put on hemodialysis and is now a chronic dialysis patient; that he began to suffer from atrial fibrillation and now requires continuous monitoring; and that he developed a low-grade infection and pneumonia. (*Id.* at 3.)

[4] According to Defendant's submissions, he has been hospitalized at a community-based hospital from May 30, 2023, through at least July 13, 2023. (D.E. 131 at 1.) During that time—specifically, on June 16, 2023—Defendant was "re-designated to FMC Devens, a Level 4 BOP medical facility in Massachusetts where he can receive dialysis." (D.E. 129 at 3; *see* Def. Ex. A. at 6.) It is unclear when Defendant will be discharged from the hospital and transferred to FMC Devens.

Before reaching the merits of a motion for compassionate release, district courts must determine whether the defendant has exhausted his administrative remedies under the FSA—that is, "defendants must at least ask the [BOP] to [move for compassionate release] on their behalf and give [the] BOP thirty days to respond." *Raia*, 954 F.3d at 595 (citing 18 U.S.C. § 3582(c)(1)(A)). The burden is on the defendant to demonstrate that he satisfied this procedural prerequisite for judicial review. *United States v. McNair*, 481 F. Supp. 3d 362, 365 (D.N.J. 2020) (quoting *United States v. Sellers*, Crim. No. 10-434, 2020 WL 1972862, at *1 (D.N.J. Apr. 24, 2020)). Failure to do so "presents a glaring roadblock foreclosing compassionate release." *Raia*, 954 F.3d at 597.

Here, Defendant submitted to the BOP an administrative request for compassionate release on July 3, 2023. (Def. Ex. A at 926.) Three days later—and without having received a response from the BOP—Defendant filed the instant Motion. (D.E. 129.) Defendant has thus failed to exhaust the administrative remedies required by the FSA, which "foreclose[es] compassionate release." *Raia*, 954 F.3d at 597

Defendant insists that his multiple BP-8 and BP-9 submissions[5] to the BOP before July 3, 2023, were sufficient to satisfy the exhaustion requirement. (*Id.* at 4.) Those requests, however, predate the onset of the medical conditions for which Defendant now seeks compassionate release. And, tellingly, none of those requests sought compassionate release under the FSA.[6] At bottom, Defendant has failed to provide to the BOP an opportunity "to bring a motion [for compassionate release] on [his] behalf," 18 U.S.C. § 3582, and therefore his Motion must be denied.

\* \* \*

Should Defendant choose to renew his motion in accordance with the FSA, he should be mindful of his burden, as the party moving for compassionate release, to demonstrate that such relief is warranted. *McNair*, 481 F. Supp. 3d at 365 (quoting *Sellers*, 2020 WL 1972862, at *1). Although the BOP's medical records may be "difficult to decipher," the onus is on Defendant—not this Court—to review the medical records and explain how BOP's provision of medical treatment has been deficient. *See, e.g.*, *United States v. Rooks*, No. 22-1332, 2022 WL 2964805, at *2 n.4 (3d Cir. July 27, 2022). Although Defendant has pointed to some ostensible inconsistencies in his extensive, 900-page medical history, (D.E. 129 at 7–8), and has alleged that the care provided by the BOP is contrary to "the recommendation[s] of specialists," (*id.* at 9–10), he has curiously failed to provide any certification from a medical professional indicating whether the BOP's treatment of his complex medical conditions has been inadequate. Likewise, Defendant has not explained how his medical conditions would be better managed if he were on home confinement. Defendant's suggestion that his sister-in-law, who was purportedly "trained as a

---

[5] Defendant allegedly filed with the BOP several BP-8 "informal resolution forms" and BP-9 appeals from denials of BP-8 forms. (D.E. 131 at 2–6.)

[6] The BP-8 and BP-9 requests purportedly included, among other things, a request to transfer to a camp, a question about how the BOP would manage his health conditions, and a complaint about the tightness of his leg restraints while he was transported to and from a medical appointment. (*Id.* at 2–3.) To the extent Defendant did in fact submit a BP-8 form requesting compassionate release, such request occurred in "approximately March 2023," months before the onset of the severe conditions for which Defendant now seeks compassionate release. (Def. Ex. A at 926.)

medical doctor," would be "ready to help [him] coordinate amongst specialists to manage his" treatment, (*id.* at 22), is insufficient.

**CONCLUSION**

For the foregoing reasons, Defendant's motion is **DENIED**.  An appropriate order follows.

                                         ___/s/ Susan D. Wigenton_____
                                         **SUSAN D. WIGENTON, U.S.D.J.**

Orig:    Clerk
cc:      Parties